**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ROBERT JARRAD CLARK** | § | |
| | § | |
| **V.** | § | **A-19-CV-958-RP** |
| | § | |
| **LORIE DAVIS** | § | |

## ORDER

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 11); and Petitioner's response thereto (Document 18).  Petitioner, proceeding pro se, paid the full filing fee for this case. For the reasons set forth below, the Court denies Petitioner's application for writ of habeas corpus.

## STATEMENT OF THE CASE

**A.      Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 21st Judicial District Court of Washington County, Texas, in cause number 17311.  Petitioner was convicted of aggravated robbery as alleged in the indictment.  On April 15, 2016, he was sentenced to 45 years imprisonment and a $6,000.00 fine.

On September 28, 2017, the Fourteenth Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.  *Clark v. State*, 2017 WL 4320005, No. 14-16-00396-CR (Tex. App. – Houston [14th Dist.] 2017, pet. ref'd).  The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on February 28, 2018.  *Clark v. State*, PDR No. 1139-17.

Petitioner also challenged his conviction in a state application for habeas corpus relief.  The

Court of Criminal Appeals denied the application without written order on August 28, 2019.  *Ex*

*parte Clark*, Appl. No. 90,106-01.

### B.    Factual Background

The factual background of this case is found in the Court of Appeals opinion and is repeated

below.

> The eighty-four-year-old complainant testified that he went to several banks and then returned to his home in Brenham. While the complainant was still in his driveway, a silver Ford pickup truck with tinted windows stopped at the end of the complainant's driveway. The complainant was carrying a deposit receipt from one bank, a withdrawal receipt from another bank, a check written out to another person, and two envelopes containing a total of $5,000 in cash.

> At trial, the complainant identified appellant as one of two black men who got out of the truck and robbed the complainant. The complainant testified that appellant grabbed the complainant's arms and knocked the complainant down, causing pain and bruising to the complainant. The robbers took the items described above, got back in the truck, and drove in the direction of U.S. Highway 290.

> The complainant testified that he could not remember what appellant was wearing at the time of the attack. The complainant did not recall whether appellant had tattoos on his face or arms. But, the complainant recognized appellant's face and facial hair. The complainant was "100 percent positive" about appellant's face.

> The complainant's wife was in the front yard during the robbery. At trial, she identified appellant as the man who attacked her husband. She was "positive" appellant was the attacker. She got a good look at him. She testified that appellant had a beard and was wearing a red shirt and blue jeans. She did not notice any tattoos on his face or arms.

> Neither the complainant nor his wife participated in a pretrial lineup to identify the robbers. They did, however, see appellant's picture in the newspaper after he was arrested.

> Immediately after the robbery, the complainant's wife dialed 911. Less than ten minutes later, City of Brenham Police Officer Tommy Kurie stopped a silver Ford pickup truck traveling eastbound on U.S. Highway 290 toward Houston. [FN1].  The

2

license plate of the truck was similar to a partial plate number that the complainant's wife provided to police. Two black men were in the truck. Appellant was the passenger. Neither man had a valid driver's license. Appellant was wearing a black shirt and black pants, and he had "a lot" of tattoos on his arms.

> FN 1 Officer Kurie was asked to watch for the truck because he was on the eastbound side of U.S. Highway 290 and this case involved "jugging"—where robbers surveil bank customers and follow them to another location to commit a burglary or robbery. A City of Brenham police officer had received information "out of Harris County in regards to the bank jugging," so they believed the robbers might travel past Kurie on U.S. Highway 290 toward Houston.

Officer Kurie arrested the driver for driving without a valid license. Kurie performed an inventory search of the truck. He found the items that had been stolen from the complainant: the deposit receipt, the withdrawal receipt, the check, bank envelopes, and $5,000 in cash. Kurie found one of the receipts on the passenger's side floorboard.

The trial court also admitted evidence that appellant had participated in another bank jugging in 2013 along with two other people. Appellant pleaded guilty to burglary of a motor vehicle for the 2013 case. Appellant's role in that case was to get the money. The driver of the getaway vehicle in the 2013 case was also the driver of the pickup in this case. The trial court admitted a picture of the third man from the 2013 case as Defense Exhibit 5. That man had facial hair like appellant, but lacked tattoos unlike appellant.

*Clark*, 2017 WL 4320005, at *2.

## C.    Petitioner's Grounds for Relief

Petitioner alleges he was denied effective assistance of counsel when his attorney failed to: (1) publish to the jury evidence pivotal to the defense, the icop video, State's Exhibit 66; (2) properly impeach Mrs. Goessler with her statement made in the video; (3) properly impeach Mr. Goessler with his statement made in the video; and (4) properly impeach Lance Weiss, a Brenham Police Officer, with his statement made in the video.

**D.     Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.  A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.     The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington v. Richter*, 562 U.S. 86, 97–100 (2011).  The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.*  Following

all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.*  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court.  *Id.* at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted).  Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 741 (quotation and citation omitted).  The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e).  That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  But absent such  a showing, the federal court must give deference to the state court's fact findings.  *Id.*

**B.    Ineffective Assistance of Counsel**

      1.    <u>AEDPA Impact</u>

Petitioner raised the same issues in state court.  The state courts rejected the merits of the claims.  As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claims by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

      2.    <u>Standard of Review</u>

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668  (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. *Id.* at 695-97. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687.

3.   <u>Application</u>

Petitioner first claims counsel was ineffective because he failed to publish to the jury "evidence pivotal to the defense" – State's Exhibit 66. Petitioner raised this claim in his direct

appeal.  The appellate court noted the trial court admitted State's Exhibit 66 but the State never published it to the jury.  *Clark*, 2017 WL 4320005, at *10.  The exhibit included an audio recording of a City of Brenham police officer's interview of the complainant and his wife soon after the robbery.  The appellate court acknowledged it lacked trial counsel's explanation for not publishing the exhibit to the jury but noted counsel's argument to the jury indicated that counsel was operating under a reasonable trial strategy.  *Id.*

The court pointed out, at the conclusion of counsel's argument, counsel implied that the State did not play the recording for the jury because it was harmful to the State's case:

> I'm going to leave you with one more thing and that's if you want evidence in this case, if you want the pictures, if you want the disk or the rental car agreements, anything like that, simply ask.
>
> And I'm going to tell you right now there's one exhibit that you haven't seen. There's one exhibit that's in evidence that all you have to do is ask for it. It's Exhibit 66. It's a disk. And that disk, at the 11 o'clock, 11:18 a.m. Monday morning is Detective Weiss or Corporal Weiss in his interview with [the complainant and his wife]. And from 11:18 a.m. until about 11:29 a.m. you will hear the description that the [the complainant and his wife] gave about the suspects. You will hear the officers radioing back and forth questions for Corporal Weiss to ask the [complainant and his wife]. Well, did you see any facial tattoos, Mr. and Mrs. [the complainant]? We didn't see any tattoos. Well, did you see any facial hair? Oh, no, but maybe if it was a little bit. And didn't [the complainant] sit up on this stand and say the only thing he remembered was that beard? Yet within eight to ten minutes after this robbery he's sitting there telling these officers he doesn't remember facial hair? Yet that is the one thing he told y'all convinced him that the right person was sitting in that courtroom?
>
> And after you've played that video, you have to ask yourselves do you feel comfortable in [appellant] being the person that they accuse of doing this and then ask yourself, [the prosecutor], State of Texas, why did you not play this for us sooner?

*Id.* at *11.

The appellate court determined trial counsel could have decided that the jury's listening to the recording during deliberations, rather than in the courtroom, would have a dramatic effect—that the jury would discover inconsistencies between the recording and the witnesses' testimony and, ultimately, determine that the State was trying to downplay exculpatory evidence. *Id.* The court concluded under these circumstances, it could not determine on a silent record that there could be no reasonable trial strategy to justify trial counsel's course of action. *Id.* The court further concluded counsel's conduct was not so outrageous that no competent attorney would have engaged in it. *Id.*

Petitioner also presented this issue in his state application for habeas corpus relief. The Court of Criminal Appeals denied it without written order. *Ex parte Clark*, Appl. No. 90,106-01.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. As explained by the state court, Petitioner has failed to show counsel's performance was deficient. When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). Petitioner failed to rebut the presumption that counsel was following a sound trial strategy in his case. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on

Petitioner's claim that he received ineffective assistance of trial counsel when counsel failed to publish State's Exhibit 66 to the jury.

Petitioner also argues counsel was ineffective for failing to properly impeach Mr. Goessler, Mrs. Goessler, and Brenham Police Officer Lance Weiss with their statements made in the icop video, State's Exhibit 66. Petitioner raised the issue of counsel failing to impeach Mr. Goessler, the complainant, in his direct appeal. The appellate court held there was no prejudice regarding impeachment of the complainant. *Clark*, 2017 WL 4320005, at *12. In his state habeas application Petitioner added his claims that counsel failed to impeach the complainant's wife and the officer who conducted the interview. The Court of Criminal Appeals denied the state application without written order. *Ex parte Clark*, Appl. No. 90,106-01.

On direct appeal the appellate court explained:

The complainant testified at trial that he did not remember what appellant was wearing during the robbery. In the complainant's handwritten statement to police (Defense Exhibit 2), the complainant had written "red shirt & blue jeans" in the margin. Trial counsel twice attempted to have the complainant's handwritten statement admitted as an exhibit without first complying with the procedure for the admission of extrinsic evidence of prior inconsistent statements. See Tex. R. Evid. 613(a). [FN omitted]. The trial court sustained the State's hearsay objections. Later, trial counsel cross-examined the complainant about the "red shirt & blue jeans" notation:

> Q: Do you remember writing that the—the man who grabbed you was wearing a red shirt?
>
> A: I didn't know what kind of shirt he was wearing.
>
> Q: Okay. Do you remember writing though that he was wearing a red shirt and blue jeans?
>
> A: No.
>
> COUNSEL: May I approach, Your Honor?

THE COURT: You may.

Q: I'm going to show you again Defense Exhibit No. 2. Specifically I want to direct your attention right over here.

A: What was the question?

Q: Do you remember the man wearing a red shirt and blue jeans?

A: I remember writing but I don't—I don't know what he was wearing really, but I couldn't tell you right now. Right then I did, but I couldn't tell you right now what he was wearing.

Q: Okay. But you can still remember exactly what he looks like; correct?

A: Yes.

During closing arguments, defense counsel argued to the jury (without objection from the State) that the complainant and his wife "wrote in their statements" that appellant was wearing a red shirt and blue jeans.

*Clark*, 2017 WL 4320005, at *12.

Based on the record, and the substantial evidence of guilt presented at trial, the appellate court concluded that Petitioner had not demonstrated prejudice as a result of the allegedly deficient performance—trial counsel's failure to "properly" impeach the complainant by following the procedure outlined by Rule 613. *Id.* The appellate court noted that trial counsel, in fact, impeached the complainant's testimony concerning what appellant was wearing, and the complainant admitted to making the statement in Defense Exhibit 2. *Id.* The court further pointed out that trial counsel also elicited testimony (1) from the complainant's wife that the primary robber had been wearing a red shirt and blue jeans; (2) from one police officer that the police were looking for a red shirt and blue jeans; and (3) from another police officer that no red shirt was found in the truck. *Id.* The court concluded any additional evidence that trial counsel could have adduced from "properly" impeaching

the complainant would not give rise to a reasonable probability that the jury would have had a reasonable doubt respecting guilt. *Id.*

Petitioner's claims regarding Mrs. Goessler and Officer Lance Weiss suffer the same fate. At trial on cross-examination Mrs. Goessler testified the primary robber had facial hair similar to Petitioner's facial hair at trial. Petitioner asserts on the video she stated the primary robber had no facial hair or it would be small. Mrs. Goessler also denied seeing tattoos on Petitioner. Petitioner says this proves she lied because her description did not match Petitioner. Petitioner contends the reason Mr. and Mrs. Goessler identified him was because they saw his picture in the newspaper a week after the robbery. Additionally, Petitioner asserts the jury is left with the impression from Officer Weiss's testimony that the Goessler's had mentioned facial hair and tattoos and he had simply failed to include it in his report.

Petitioner now claims he was in the front passenger seat of the vehicle when his accomplices robbed Mr. Goessler. Petitioner states he would have testified at trial had he known Mrs. Goessler knew he was in the truck but did not see him or was not able to identify him. Petitioner claims his role in jugging consisted of breaking into cars, not robbing or attacking anyone.

Petitioner has failed to show he was prejudiced by counsel's alleged deficiency. To demonstrate prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Mrs. Goessler testified she identified Petitioner, because he is the man she saw coming up the driveway and she got a good look at him. She positively identified him as the man who attacked

her husband.  Mr. Goessler also testified he was 100% positive on Petitioner's face.  Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel when counsel failed to impeach Mr. Goessler, Mrs. Goessler, and Officer Weiss.

## CONCLUSION

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c) (1)(A).  A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

13

*Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court denies Petitioner a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Application for Habeas Corpus Relief is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on July 22, 2020.


ROBERT PITMAN
UNITED STATES DISTRICT JUDGE